

**U.S. Department of Justice**

Environment and Natural Resources Division

90-1-24-03287

_Law and Policy Section_                                              _Telephone (202) 514-1442_
_P.O. Box 7415_                                                       _Facsimile (202) 514-4231_
_Ben Franklin Station_
_Washington, DC  20044-7415_

Clerk's Office                                              September 26, 2012
U.S. District Court
Northern District of California, San Jose
Robert F. Peckham Federal Building
280 South 1st Street
San Jose, CA 95113

> Re:    Baykeeper v. Zanker Road Resource Management, Ltd., United States District
>        Court for the Northern District of California, Case. No. 5:12-cv-2157

Dear Clerk of Court:

I am writing to notify you that the United States has reviewed the proposed consent decree in this action and does not object to its entry by this Court.

On August 14, 2012, the Citizen Suit Coordinator for the Department of Justice received a copy of the proposed consent judgment in the above-referenced case for review pursuant to Clean Water Act, 33 U.S.C. § 1365(c)(3).  This provision provides, in relevant part:

> No consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General and the Administrator.

See also 40 C.F.R. § 135.5 (service on Citizen Suit Coordinator in the U.S. Department of Justice).  A settlement that does not undergo this federal review process is at risk of being void.

In its review, the United States seeks to ensure that the proposed consent judgment complies with the requirements of the relevant statute and is consistent with its purposes. See Local 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 525-26 (1986) (a consent decree should conform with and further the objectives of the law upon which the complaint was based). For example, if the defendant has been out of compliance with statutory or permit requirements, the proposed consent judgment should require the defendant to come into prompt compliance and should include a civil penalty, enforceable remedies, injunctive relief, and/or a supplemental environmental project (SEP) payment sufficient to deter future violations, or combinations of the above.

In this case, the Plaintiff alleged violations of section 301(a) and 402 of the Clean Water Act, 33 U.S.C. § 1311(a) and § 1342, for the unlawful discharge of pollutants and violations of storm water permit requirements.  In terms of injunctive relief, the consent decree provides that the Defendant update its current Storm Water Pollution Prevention Plan to incorporate storm water pollution prevention measures and to comply with provisions set forth in the Storm Water Permit and include specified Best Management Practices.  The consent decree also provides for employee training, specified stormwater sampling schedules and reporting, and providing the Plaintiff with up-to-date sampling and analysis reports and end of season summaries.  The Defendant's facility will also be subject to twice-yearly site inspections performed by representatives of Plaintiff during the life of the consent decree.

This consent decree further provides that the Citizens Committee to Complete the Refuge and San Francisco Bay Bird Observatory will each receive a total payment of $17,500 for SEPs. These non-profit organizations work on habitat restoration in the Bay Area. The consent decree also provides that, in the event of future missed deadlines by the Defendant, the Defendant shall pay additional stipulated amounts to the Rose Foundation for restoration projects and/or improvements of the watershed in the area affected by the Defendant's discharges.

Where a consent judgment provides for the payment of sums to a third party for a SEP, the United States asks the third party to confirm in writing that it is a section 501(c)(3) tax-exempt entity and that it (1) has read the proposed consent judgment; (2) will spend any monies it receives under the proposed judgment for the purposes specified in the judgment; (3) will not use any money received under the proposed consent judgment for political lobbying activities; and (4) will submit to the Court, the United States, and the parties a letter describing how the SEP funds were spent.

On September 6, 2012, August 27, 2012, respectively, the United States received from Citizens Committee to Complete the Refuge and San Francisco Bay Bird Observatory letters confirming:  that all funds received from the Defendant as a result of the proposed consent decree would be used solely on projects that support habitat restoration; that the organization will provide a report to the Justice Department, the Court and the parties describing how the funds are used; and that these organizations will not use the funds to support litigation or for political lobbying activities prohibited by section 501(c)(3) of the IRS Code.  See Attachments A and B. On August 21, 2012, the United States received a similar letter from the Rose Foundation (Attachment C) indicating that it will spend any stipulated payments it receives under the consent decree for projects to benefit the San Francisco Bay Watershed; none of the funds shall be used to support San Francisco Baykeeper or for political lobbying activities by section 501(c)(3) of the IRS Code. The Rose Foundation will also provide a report to Justice Department, the Court and the parties describing how the funds are used.  The United States believes that these letters will help ensure that any monies expended under the proposed consent judgment will be used in a manner that furthers the purposes of the Act, and that is consistent with the law and the public interest.

Given these representations, the United States has no objection to the entry of the proposed consent judgment.  We accordingly notify the Court of that fact.

The United States affirms for the record that it is not bound by this settlement. See, e.g., Hathorn v. Lovorn, 457 U.S. 255, 268 n.23 (1982) (Attorney General is not bound by cases to which he was not a party); Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found. Inc., 484 U.S. 49, 60 (1987) (explaining that citizen suits are intended to "supplement rather than supplant governmental action"); Sierra Club v. Electronic Controls Design, 909 F.2d 1350, 1356 n.8 (9th Cir. 1990) (explaining that the United States is not bound by citizen suit settlements, and may "bring its own enforcement action at any time"); 131 Cong. Rec. S15,633 (June 13, 1985) (statement of Senator Chafee, on Clean Water Act section 505(c)(3), confirming that the United States is not bound by settlements when it is not a party).  The United States also notes that, if the parties subsequently propose to modify any final consent judgment entered in this case, the parties should so notify the United States, and provide a copy of the proposed modifications, forty-five days before the Court enters any such modifications.  See 33 U.S.C. §1365(c)(3).

We appreciate the attention of the Court.  Please contact the undersigned at (202) 514-3932 if you have any questions.

Sincerely,

*s/ Judy Harvey*

Judy Harvey, Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Washington, D.C.  20044-4390

cc:     Counsel on Record via ECF

Attachments

# ATTACHMENT A

 CITIZENS COMMITTEE TO COMPLETE THE REFUGE

453 Tennessee Lane, Palo Alto, CA 94306     Tel: 650-493-5540     www.cccrrefuge.org     cccrrefuge@gmail.com

August 23, 2012

Citizen Suit Coordinator
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-7415

Lisa Jackson, Administrator
US EPA, Ariel Rios Building
1200 Pennsylvania Avenue NW
Mail Code: 1101A
Washington, DC 20460

**Re: [Proposed] Consent Decree – Baykeeper and Zanker Road Resource Management**

Dear Sir and Madam,

This letter is intended to provide assurance that I have received the proposed Consent Decree between Baykeeper and Zanker Road Resource Management and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Citizens Committee to Complete the Refuge (CCCR):

1. I understand that CCCR may receive funds from Zanker Road Resource Management as specified in the Consent Decree.

2. As specified in the Consent Decree, CCCR shall use the monies only on projects that further goals of habitat protection and restoration in San Francisco Bay.  None of the funds shall be used to support litigation nor will they be used  for political lobbying activities.

3. Within 30 days of these funds being disbursed, CCCR shall send a report to the Justice Department, the Court, and the parties a letter describing how the SEP funds were used demonstrating the nexus with the Consent Decree.

The Citizens Committee to Complete the Refuge, is an all volunteer based 501(c)(3) tax-exempt corporation.  We have an ongoing history of interest in wetlands protection, wetlands restoration and wetlands acquisition. The Committee was originally formed in 1965.  Our senior members were part of a group of citizens who became alarmed at the degradation of the Bay and its wetlands.  We joined together, and with the support of Congressman Don Edwards, requested that Congress establish a Wildlife Refuge.  The process took 7 long years and in 1972 legislation was passed to form the Don Edwards San Francisco Bay Wildlife Refuge (Refuge), the first national wildlife refuge in an urban setting. We turned to Mr. Edwards again, and in 1988, his legislation to double the size of the Refuge was signed into law.

Our successes have proved exciting and rewarding. Our education and advocacy efforts have led to Refuge additions of 1600 acres of Bair Island in Redwood City, 288 acres of the Warm Springs Unit of the Refuge in Fremont, 128 acres of Mayhews Landing in Newark, the Munster property in Union City, the Cullinan Ranch in Napa, and the Marin Islands, to name just a few. We regularly comment on Section 404 and 401 issues and have been instrumental in the redesign of projects such as the 840-acre Pacific Commons project in Fremont, which in the end required the preservation and restoration of 390 acres of rare seasonal wetlands habitat. The end goal of all of these acquisitions is the permanent protection and restoration of wetlands.

While our primary interest is the acquisition of land for the Refuge, and thus permanent protection and restoration of these lands, we recognize the Bay does not exist in isolation from surrounding natural resources. Watershed protection is absolutely necessary. We have taken an active interest in Clean Water Act (CWA) regulations, policies, implementation and enforcement. We have established a record of providing information regarding possible CWA violations to both the Corps and EPA, regularly responding to Corps public notices and informing the public of important local CWA issues. We have been actively involved in the California State Water Resources Control Board process of developing policy to protect, preserve, and improve California's aquatic resources.

All of these actions demonstrate our ongoing commitment to wetland issues, towards protecting the public interest in wetlands, and in Section 404 and 401 of the CWA. We have worked hard to educate the public about the quality-of-life-issues related to the health of the Bay and its wetlands.

To date, approximately 12,000 acres within the congressionally approved Refuge expansion boundary remain available for acquisition or donation to the Refuge. Undeveloped lands along the edges of San Francisco Bay will provide increasingly important refuge to tidal marsh species as sea level rises. It is imperative the public is educated about the value of preserving and restoring these lands. In addition, sea level rise will necessitate changes to the traditional methods of tidal marsh restoration along the edges of the bay if we wish the restored wetlands to be sustainable into the future.

CCCR will utilize the funds received to produce programs and/or materials that will educate the public about, and encourage their activism on behalf of protection of wetlands for the purpose of habitat restoration. We will continue advocacy programs to protect these lands from development and continue to press for wetlands mitigation/restoration that is sustainable into the future.

I hope that this provides you with the information you require. Do not hesitate to contact me if you need additional information at 650-493-5540 or florece@refuge.org.

Sincerely,

*Florence LaRiviere*

Florence LaRiviere,
CCCR Chairperson

cc: Andrea Kopecky, Associate Attorney, San Francisco Baykeeper

# ATTACHMENT B



SAN FRANCISCO BAY
BIRD OBSERVATORY

August 22, 2012

Ms Sarah Lu
U.S. Department of Justice
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re:  Baykeeper v. Zanker Road Resource Management, Ltd.

Dear Ms Lu,

This letter is intended to provide assurance that I have received the proposed Consent Decree
between Baykeeper and Zanker Road Resource Management, Ltd and that I am authorized by
my Board of Directors to make the following binding commitments on behalf of San Francisco
Bay Bird Observatory, Inc. (SFBBO).

   1.  I understand that SFBBO may receive funds from Zanker Road Resource Management,
       Ltd. as specified in the Consent Decree.

   2.  As specified in the Consent Decree, SFBBO shall only use these monies on projects that
       support habitat management and restoration in the San Francisco Bay Area. None of the
       funds shall be used to support litigation nor will they be used for political lobbying
       activities.

   3.  Within 30 days of these funds being disbursed, SFBBO shall send to the Court, the
       United States, and the parties a letter describing how the SEP funds were spent
       demonstrating the nexus with the Consent Decree.

SFBBO is a 501(c)(3) non-profit corporation formed in 1981 and dedicated to the conservation
of birds and their habitats through science and outreach. With 31 years of experience conducting
avian research and monitoring in the San Francisco Bay Area, SFBBO provides land managers
with the tools to make informed land management and habitat restoration decisions that benefit
birds and our communities. With the recent addition of our Habitats Program, our work has
expanded to the planning, implementation, and monitoring of tidal marsh – upland transitional
zones restoration. The success of our programs hinges on our extensive partnerships with
resource agencies, landowners, and other nonprofits. In addition, we actively provide

opportunities for people to be directly involved in the natural history and science of the San Francisco Bay Area, and our team of 100 long-standing, dedicated volunteers greatly enhances the reach of our science.

The Coyote Creek is the largest freshwater input into the South San Francisco Bay and also boasts one of the largest riparian restoration sites in the Santa Clara Valley. SFBBO has operated the Coyote Creek Field Station, a year-round bird banding station located in the riparian restoration site, since 1982. We have several ongoing studies addressing the effects of restoration, climate change, and water-borne contaminants on riparian songbirds. However, vegetation and habitat monitoring does not occur regularly at Coyote Creek, and as a result, the long-term benefits of this restoration site for wildlife and water quality cannot be fully assessed. With these funds, we will measure and monitor vegetative recruitment and growth within the site. This vital information will inform and support adaptive watershed management and restoration planning. We will share the information with the Santa Clara Valley Water District, local restoration planners, and nonprofit partners and report the results to the community and our volunteers through our website. The funding will be used to buy monitoring equipment and to support staff time and local travel necessary to manage and implement the project. Typical project tasks will include volunteer recruitment, staff and volunteer training, data collection and analysis, and reporting/public dissemination of results. During the process, we will provide opportunities for the public at large to engage in our work through guided tours of the station and public outreach events.

I hope that this provides you with the information you require.  Do not hesitate to contact me if you need additional information at 408-946-6548 or jdemers@sfbbo.org.

Sincerely,

Jill Demers, Executive Director

# ATTACHMENT C

*Harvey, Judy*

# THE ROSE FOUNDATION

For Communities & the Environment

8/15/12

Sarah Lu
Environment & Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, D.C. 20044-7415

Re:  San Francisco Baykeeper v. Zanker Road Resource Management

Dear Ms. Lu,

This letter is intended to provide assurance that I have received the proposed Consent Decree between the San Francisco Baykeeper and Zanker Road Resource Management, and that I am authorized by my Board of Directors to make the following binding commitments on behalf of the Rose Foundation.

1) I understand that the Rose Foundation may receive stipulated payments from Zanker Road Resource Management as specified in the Consent Decree.

2) The Rose Foundation shall only use any Zanker funds received to support projects related to benefiting the water quality of the San Francisco Bay watershed. None of the funds shall be used to support San Francisco Baykeeper.

3) After all the funds have been disbursed, the Rose Foundation shall send a report to the Justice Department, the court and the parties describing how the funds were utilized and demonstrating conformance with the nexus of the Consent Decree.

## Rose Foundation for Communities and the Environment

The Rose Foundation is a 501(c)(3) public charity (tax ID#94-3179772).  Its mission is to support grassroots initiatives to inspire community action to protect the environment, consumers and public health.  To fulfill this mission, the Rose Foundation conducts the following activities:

• Raise money to award as grants to qualified non-profit organizations conducting charitable operations. The Foundation does not fund political lobbying activities prohibited by Section 501(c)(3) of the IRS Code.

• Work directly in schools and in the community to encourage environmental stewardship and civic participation.

• Help government efforts to control pollution and protect the environment by encouraging community engagement in local, state and federal research and policy development.

---

6008 College Avenue, Suite 10 • Oakland, CA • 94618

(510) 658-0702 • (510) 658-0732 • rose@rosefdn.org • www.rosefdn.org

*corr 901-24-03287*

Within this broad range of activities, all of the Rose Foundation's work revolves around one or more of the following strategic themes:

- Build and maintain a bridge between the community and organized philanthropy.

- Protect the natural environment, public health, and community and consumer rights.

- Promote collaboration between labor, environmental, business, consumer and social interests.

- Cultivate a new generation of environmental stewards and social policy leaders.

- Respect the inalienable rights protected by our nation's constitution, and the essential human rights to clean air, clean water, and individual dignity and privacy.

The Rose Foundation is governed by a Board of Directors.  Grant applicants are required to submit written proposals, which must include at a minimum specific information about the goals, activities and projected outcomes of the proposed project, background about the charitable applicant, budget information, and a specific funding request.  The Foundation may require additional information in order to fully evaluate the application.  Applications are first screened by Foundation staff.  Staff then makes recommendations to the Foundation Board for action.  The Foundation requires all projects to submit written reports within one year of receipt of the grant award describing work conducted under the grant, thereby providing an accountability mechanism over funds awarded.  Annual audits by the certified public accounting firm Levy and Powers are posted on the Foundation's website www.rosefdn.org.

I hope this provides you with the information you require.  Please do not hesitate to contact me with any questions, or for additional information at (510) 658-0702 or tlittle@rosefdn.org.

Sincerely,

Tim Little
Executive Director

2